UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEF L. LOPEZ, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Civil Action No. 1:20-cv-939 <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

This is an action for judicial review of an administrative denial of disability benefits that the United States Navy failed to provide to Corporal Josef L. Lopez, USMC (Ret.) ("Plaintiff" or "Lopez") under the terms of the Servicemembers Group Life Insurance Traumatic Injury Protection Program ("TSGLI").  Lopez, a Marine reservist, was called to active duty to deploy for combat operations in Iraq as part of *Operation Enduring Freedom*.  As part of his mandatory pre-deployment training, Lopez was injected with the smallpox vaccine—a traumatic event which almost killed him.  His legs stopped working, and the paralysis slowly crept up his body until he had trouble breathing.  He was medically induced into a coma and medically evacuated to Germany.  He was moved eventually to then-Bethesda Naval Hospital but suffered significant neurological damage such that he was unable to carry out several activities of daily living.  Lopez then endured a multi-year struggle attempting to obtain TSGLI benefits to which he is entitled.  His application for TSGLI benefits and several appeals were rejected because the government erroneously applied a regulation that was enacted years after his injury and his application for benefits.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 5 U.S.C. §§ 701-706 (actions under the Administrative Procedures Act ("APA")); 28 U.S.C. § 1331 (actions arising under the laws of the United States); and 38 U.S.C. § 1975 (actions under the Servicemembers' Group Life Insurance statute).

2. Lopez exhausted his administrative remedies when he received the final agency action on May 20, 2016.  *See* Exhibit 1.  Lopez brings this action fewer than four years after receiving his final agency action.  Lopez, therefore, timely files this complaint within the six-year statute of limitations required for actions brought under the APA.  28 U.S.C. § 2401(a).

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e), because this is a civil action in which the defendant is an agency of the United States.  On information and belief, the Defendant is headquartered at 1000 Navy Pentagon, Washington, DC 20350-2000.

## PARTIES

4. Lopez is a citizen of the United States and a resident of Springfield, Missouri.  Lopez served in the United States Marine Corps and medically retired on June 30, 2009.  *See* Exhibit 2.

5. The Defendant is the United States of America acting by and through the Department of the Navy ("Defendant"), an agency of the United States government.

## FACTUAL BACKGROUND

### Lopez Suffered a Traumatic Injury and a Loss of Activities of Daily Living

6. On or about September 2006, Lopez, a reservist radio operator, received orders to deploy to Iraq.  In September 2006, as part of his mandatory pre-deployment training, he was injected with the smallpox vaccine.  Lopez deployed to Iraq with his unit on September 23, 2006.

7. On the evening of September 29, 2006, Lopez began to slowly lose his ability to walk. The next day, the paralysis continued to creep slowly up his body until it impacted his ability to breathe. Doctors placed him on a ventilator, medically induced him into a coma, and evacuated him to a United States military hospital in Landstuhl, Germany.

8. Doctors in Landstuhl diagnosed Lopez with an extremely rare complication associated with the vaccine—Acute Disseminated Encephalomyelitis ("ADEM"). In essence, Lopez's immune system could not differentiate the vaccine from his own nervous system, so it attacked both.

9. Once Lopez arrived in Germany, the Marine Corps notified his family and told them that Lopez was critically ill. Lopez was in a coma and non-responsive, and doctors needed to move him to the Walter Reed National Military Medical Center ("Bethesda Naval") for treatment. But first they needed him to respond or they feared that he would not survive the trip.

10. Accordingly, doctors recommended to Lopez's family that they fly to Germany and try to get him to respond. Because Lopez's father ("Mr. Lopez") was suffering from advanced Alzheimer's Disease and unable to travel, his mother ("Mrs. Lopez"), who served as Mr. Lopez's caregiver, was forced to find an alternative care arrangement for Mr. Lopez while she traveled to Germany.

11. Upon arriving in Germany, doctors told Mrs. Lopez that her son was paralyzed and close to death, and that if there was any hope for him to walk again, or even to survive, he would have to be moved to Bethesda Naval. Fortunately, Lopez responded to his mother's voice and survived the trip to Bethesda Naval.

12. Once at Bethesda Naval, Lopez's medical struggles continued. As his mother sat next to his hospital bed at Bethesda Naval as two doctors—a neurologist and an immunologist—

debated which course of treatment Lopez should undergo. Each doctor thought that the other's course of action would kill Lopez.

13.     At the end of the debate, the doctors turned to Mrs. Lopez and asked her to choose. Fortunately, she chose a course of action that worked. Lopez received high doses of Intravenous Immunoglobulin ("IVIG") and began to respond positively.

14.     He has had setbacks, however, suffering a relapse, which required that he be hospitalized and given additional IVIG treatments. Although Lopez's upper extremities regained their pre-morbid strength, he continues to experience lingering deficits. His nervous system is damaged to the point that he has trouble controlling his bowels and bladder, which require that he take stool softeners and wear a condom catheter attached to a "leg bag" to collect his urine.

15.     Additionally, his legs fatigue quickly, resulting in muscle spasms and cramps. He also has worse balance, a lingering neurological sensation in his leg, and he is unable to run. Finally, the trauma has left Lopez with cognitive deficits, including short-term memory loss and a flattened affect.

16.     As a result of Lopez's trauma, he submitted a claim for benefits under the TSGLI on February 20, 2008. *See* Exhibit 3.

**TSGLI Provides Payment for Service Members Injured by a Traumatic Event**

17.     Congress enacted TSGLI, effective December 1, 2005, in order to mitigate the inevitable financial hardships that service members and their families incur when a service member is forced to endure a lengthy recovery and rehabilitation period because of a traumatic injury. P.L. 109-13. To ensure servicemembers are protected, TSGLI coverage applies automatically upon entry into service as a rider to Service Group Life Insurance ("SGLI") coverage. 38 U.S.C. § 1980A(a).

18. Over time, this coverage has expanded to protect more servicemembers. By way of example, TSGLI initially only extended retroactive coverage in certain circumstances, such as losses that resulted from injuries incurred during combat in the theater of operations for Operations Iraqi Freedom and Enduring Freedom. 70 Fed. Reg. 75940 (Dec. 22, 2005). On October 13, 2010, Public Law 111-275 removed the combat requirement to extend eligibility for retroactive TSGLI to servicemembers regardless of the geographic location of where the injury occurred. P. L. 111-275. Additionally, the United States Secretary of Veteran Affairs, who is empowered to enact regulations that comport with the statute's intent, modified the original schedule of losses to include Other Traumatic Injuries ("OTIs") because the Secretary recognized that there were many other severe traumatic injuries that members incur that were not specifically listed in the statute. 73 Fed. Reg. 71929 (Nov. 26, 2008).

19. TSGLI applies to service members who suffered a qualifying loss as a result of a traumatic injury, and he or she may receive payment between $25,000 and $100,000 under TSGLI depending on the severity of their qualifying loss. 38 CFR §9.20(e)(7).

20. The benefit is paid to the member, someone acting on the member's behalf if the member is incompetent, or the member's SGLI beneficiary if the member is deceased. *Id.* at §9.20(g)(1)(iii).

21. All members covered under SGLI who experienced a traumatic event that directly results in a traumatic injury causing a scheduled loss defined under the program are eligible for TSGLI payment. *Id.* at §9.20(d)(1).

22. A qualifying loss includes the inability to carry out the activities of daily living (ADL) resulting from a traumatic injury. *Id*. at §9.20(e)(7).

23. A service member applies for TSGLI benefits at his or her branch of service TSGLI office. 70 Fed. Reg. 75944 (Dec. 22, 2005). Upon receiving a denial, the service member may appeal the decision to his or her branch of service TSGLI office or its higher appeal authority. 38 CFR §9.20(i)(1). They will then send their decision to the Office of Servicemembers' Group Life Insurance (OSGLI). Exhibit 4, SECNAVINST 1770.4A. Then the OSGLI will make a determination that, for a Marine, is appealable to the Department of the Navy, Appeals Board for TSGLI program. *Id*. at 6. This decision is appealable to the Department of the Navy, Board for Correction of Naval Records. *Id*. If further appeal is necessary, TSGLI allows anyone who receives an adverse TSGLI decision to obtain judicial review in a United States District Court of competent jurisdiction. 38 U.S.C.A. § 1975.

### Review Boards Wrongfully Deny Lopez's Claim for TSGLI Benefits

24. Lopez's circumstance falls squarely within the intent of TSGLI. As a result of a traumatic event, he was forced to undergo a significant recovery and rehabilitation, during which time he was unable to perform at least two ADLs for 120 days. This caused his family to incur significant financial hardship. Lopez is from Missouri. Because Lopez was being treated at Bethesda Naval, his mother and brother incurred significant expenses to remain near him. Mrs. Lopez's prolonged absence from home resulted in her losing one of her two jobs. Moreover, when Lopez was finally able to travel home, he was confined to a wheelchair. Accordingly, Mrs. Lopez incurred significant expenses to make her home wheelchair accessible. The costs incurred by Lopez and his family in dealing with this traumatic event constitute exactly the type of situation for which TSGLI was designed to provide relief.

25. After Lopez submitted his claim for TSGLI benefits on April 8, 2008 to the TSGLI office of the United States Marine Corps, the office denied his claim in a letter dated May 13, 2008. *See* Exhibit 5.

26. Lopez timely appealed his first denial on May 11, 2009. *See* Exhibit 6. On May 26, 2009, the TSGLI office of the United States Marine Corps issued a letter that again denied Lopez's claim for TSGLI benefits. *See* Exhibit 7.

27. The May 26, 2009 denial letter stated that "it is clear that [Lopez was] unable to perform at least two ADLs for a period of over 120 days;" however, "the loss has been determined NOT to be the result of a traumatic event." *Id.* The letter also explained that "[f]urther appeals, if so desired, should focus on the question of whether or not a reaction to a vaccine can be considered a traumatic event, a determination that cannot be made at this level." *Id.*

28. The Office of Servicemembers' Group Life Insurance ("OSGLI") issued a letter to Lopez dated June 2, 2009 that further explained that his "claim was not approved because [his] loss was not a direct result of a traumatic event." Exhibit 8. It cited the definition of a traumatic injury as "the application of external force, violence, chemical, biological, or radiological weapons, or accidental ingestion of a contaminated substance causing damage to a living being." *Id.*

29. Lopez timely appealed this decision on May 31, 2010. *See* Exhibit 9. The TSGLI Appeals Board denied his second appeal in a letter dated June 15, 2010. *See* Exhibit 10.

30. In the June 15, 2010 letter the TSGLI Appeals Board "[did] not contest the fact that [Lopez] may have suffered a loss of two ADL's." *Id.* The Board, however, determined that "the condition is not payable under the previously stated guidelines." *Id.* The letter referred to a

regulation that was <u>not</u> in effect at the time of Lopez's injury or when he applied for TSGLI benefits. *Id.*

31. On May 18, 2012, Lopez timely appealed the denial of his TSGLI benefits to the Board for Correction of Naval Records ("BCNR"). *See* Exhibit 11. On April 9, 2013, the BCNR administratively closed his case because it was unable to obtain Lopez's medical records from the Department of Veterans Affairs ("VA") in St. Louis, Missouri. *See* Exhibit 12. The administrative closure was taken "without prejudice to any further requests for corrective action that should include the material contained in [Lopez's] VA folder." *Id.*

32. On June 1, 2015, Lopez renewed his appeal to the BCNR. *See* Exhibit 13. Although Lopez was unsuccessful in obtaining his records from the VA, he attached his medical records obtained when he filed his disability claims with the VA in 2008. *See* Exhibit 3.

33. The BCNR denied Lopez's appeal in a letter dated May 20, 2016. *See* Exhibit 1. It stated that Lopez's injuries "resulted in the development of disabilities warranting [his] placement on the Permanent Disability Retirement List." *Id.* BCNR further stated that "[a]s a result of your traumatic injury, you applied for [TSGLI] in April 2008." *Id.*

34. Regulations define traumatic injury as "physical damage to a living body that is caused by a traumatic event as defined in paragraph (b) of this section." 38 C.F.R § 9.20(c). Therefore, by referring to Lopez's injury as "a traumatic injury," BCNR acknowledged that Lopez's vaccination was a traumatic event.

35. However, BCNR determined that there was "insufficient evidence to warrant granting [Lopez's] TSGLI [benefits]." Exhibit 1. The May 20, 2016, letter refers to a regulation that was <u>not</u> in effect at the time of Lopez's injury or when he applied for TSGLI benefits.

36. The text of 38 C.F.R. § 9.20(e)(3) that was in effect on the date Lopez was injured (September 2006) and on the date Lopez applied for TSGLI benefits (April 2008) is as follows:

> A benefit will not be paid if a scheduled loss is due to a traumatic injury--
> (i) Caused by--
> (A) The member's attempted suicide, while sane or insane;
> (B) An intentionally self-inflicted injury or an attempt to inflict such injury;
> (C) Medical or surgical treatment of an illness or disease;
> (D) Willful use of an illegal or controlled substance, unless administered or consumed on the advice of a medical doctor; or
> (ii) Sustained while a member was committing or attempting to commit a felony.

70 Fed. Reg. 75947 (Dec. 22, 2005).

37. The text of 38 C.F.R. § 9.20(e)(3) used by the TSGLI Appeals Board and the BCNR to justify denying Lopez's claim came from a version of the regulation that went into effect on November 26, 2008—more than two years after his injury and more than six months after he filed his claim. That version of the regulation added an exemption for "preventive medical procedures such as inoculations." 73 Fed. Reg. 71927, 71931 (Nov. 26, 2008). Because the regulation upon which Lopez's claims was denied did not take effect until after his injury and his claim, it is not applicable to Lopez's case.

38. Accordingly, Defendant applied the wrong regulation while reviewing Lopez's claim for TSGLI benefits and thus committed legal error.

39. Defendant failed to approve Lopez's claim for benefits even though Lopez satisfied the eligibility criteria.

40. Lopez has suffered an unwarranted denial of benefits under the TSGLI program.

## CAUSES OF ACTION

41. Plaintiff repeats and realleges the allegations in paragraphs 1-40 above.

42. Plaintiff requests judicial review and reversal of Defendant's denial of his claim for TSGLI benefits, based upon Defendant's:

    (a) determination that Plaintiff is not entitled to benefits, which was arbitrary, capricious an abuse of discretion, or otherwise not in accordance with law;

    (b) failure to apply the correct regulation in reviewing Plaintiff's claim; and

    (c) failure to pay benefits due and owing under the TSGLI program.

## **PRAYER FOR RELIEF**

43. Plaintiff Prays for the Court to:

    (a) award $75,000 in TSGLI program benefits plus interest, which are formulaic in nature, or in an amount to be determined by the Court;

    (b) award interest, costs and attorneys' fees as provided by statute; and

    (c) grant such other and further relief as the Court may deem just and proper, including, but not limited to, payment of Plaintiff's reasonable costs and attorney's fees.

## JURY DEMAND

Plaintiff demands a jury on all issues triable to a jury.

Dated: April 9, 2020

By: /s/ Miguel Eaton
Miguel Eaton (D.C. Bar No. 983157)
Yury Kalish (D.C. Bar No. 1020172)
Kayla Davis (D.C. Bar No. 176873)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
*Attorneys for Plaintiff*