**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JOSEF L. LOPEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Civil Action No. 20-939 (BAH)<br><br>Chief Judge Beryl A. Howell |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Josef L. Lopez brought this action for judicial review of an administrative denial of benefits by the United States Department of the Navy under the terms of the Traumatic Injury Protection Program within the Servicemembers Group Life Insurance ("TSGLI").  Plaintiff was seriously harmed in 2006 by a rare immune response to the smallpox vaccine, which was administered to him in connection with his military service and resulted in permanent impairments.

When plaintiff applied for short-term disability benefits under the TSGLI, his claim was denied on the grounds that his adverse immune reaction to the vaccine was not caused by a "traumatic event" covered by that program.  After years of appeals, the Board for Correction of Naval Records ("BCNR") eventually concluded that plaintiff's injuries were excluded from the scope of coverage by a regulation, which was in effect at the time of the injury and had been clarified with an amendment promulgated after plaintiff was injured and filed his initial TSGLI claim.

Plaintiff brought this case under the Administrative Procedure Act ("APA"), challenging the BCNR's denial of benefits on various grounds.  The government has filed a motion to

dismiss, arguing that plaintiff has failed to state a claim for which relief can be granted and that this Court lacks jurisdiction over one of his claims.  Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 14.  For the reasons set forth below, the government's motion to dismiss is granted.

## I.    BACKGROUND

The facts and procedural history relevant to defendant's pending motion are discussed below.

### A.    Plaintiff's Injury

Plaintiff was a reservist radio operator in the United States Marine Corps.  Am. Compl. at 1, ¶ 6, ECF No. 11.  In September 2006, plaintiff received orders to deploy to Iraq and received a smallpox vaccine as part of his mandatory pre-deployment training.  *Id.* ¶ 6.  Soon after deploying to Iraq, plaintiff started to lose the ability to walk and became increasingly paralyzed over the next day.  *Id.* ¶ 7.  He was placed in a medically induced coma and evacuated to a military hospital in Germany, and then transported to Walter Reed National Military Medical Center ("Bethesda Naval") for treatment.  *Id.* ¶¶ 7–9.  Plaintiff was diagnosed with Acute Disseminated Encephalomyelitis, an extremely rare complication sometimes associated with vaccination, in which a person's immune system attacks the nervous system.  *Id.* ¶ 8.

At Bethesda Naval, plaintiff received treatment and responded positively.  *Id.* ¶ 13.  His nervous system was permanently damaged, however, and he has lingering deficits.  *Id.* ¶ 14.  Plaintiff continues to experience physical and cognitive symptoms, including short-term memory loss, poor balance, and difficulty controlling his bowels and bladder.  *Id.* ¶¶ 14–15.

### B.    Administrative Proceedings

Plaintiff submitted a claim with the Department of Veterans Affairs ("VA") for long-term disability benefits, on February 20, 2008, which was subsequently approved on July 10, 2009.  Am. Compl. ¶ 16 (citing *id.*, Ex. 3. VA Disability Approval Letter (July 10, 2009), ECF No. 11-

3).  The VA assigned defendant a 90% disability rating based on the conditions associated with

him military service, with a corresponding monthly entitlement amount of $1,604.  VA

Disability Approval Letter (July 10, 2009) at 1–2.  The government indicates that plaintiff was

"placed on the Permanent Disability Retired List, which allows him to receive all the benefits

and healthcare that designation encompasses."  Def.'s Mem. Supp. Mot. to Dismiss ("Def.'s

Mem.") at 17 n.4, ECF No. 14-1.

Plaintiff also filed a claim for short-term disability benefits under the TSGLI.  Congress

established TSGLI in 2005 to provide monetary assistance for service members who suffer

serious traumatic injuries.  38 U.S.C. § 1980A.  TSGLI provides payments of $25,000 per

qualifying 30-day period (up to a total of 120 days, for a maximum benefit of $100,000) for the

short-term recovery needs of those who qualify.  *Id.*

To be eligible for TSGLI benefits, a service member must satisfy various legal criteria,

depending on the type of injury suffered.  38 U.S.C. § 1980A; 38 C.F.R. § 9.20.  To make a

claim for TSGLI benefits, a service member must submit an application to his service—here, the

United States Marine Corps.  *See* Am. Compl. ¶ 23.  After receiving the claim materials, the

service determines whether the insured member is covered by the TSGLI program and whether

he sustained a qualifying loss.  38 U.S.C. § 1980A(f); 38 C.F.R. § 9.20(g).  The service's

determination is governed by 38 U.S.C. § 1980A, 38 C.F.R. § 9.20, and the TSGLI Procedures

Guide.  A claimant may appeal an adverse determination with the relevant service, 38 C.F.R.

§ 9.20(i), and may seek federal court review pursuant to 38 U.S.C. § 1975.

Plaintiff submitted his claim for TSGLI benefits, on April 8, 2008, to the TSGLI office of

the United States Marine Corps, and the office denied his claim in a letter dated May 13, 2008.

Am. Compl. ¶ 25 (citing *id.*, Ex. 5, Claim Denial Letter (May 13, 2008), ECF No. 11-5).  After

appealing this denial,  *id.* ¶ 31 (citing *id.*, Ex. 6, Lopez's First Appeal Letter (May 11, 2009),

ECF No. 11-6), the Marine Corps TSGLI office denied plaintiff's claim on the ground that his

"loss [was] determined NOT to be the result of a traumatic event," *id.* ¶ 32 (quoting *id.*, Ex. 7,

First Appeal Denial Letter (May 26, 2009), ECF No. 11-7).  Plaintiff then received another letter

further explaining the decision, stating that his claim was denied because his loss was the result

of his reaction to the smallpox vaccine rather than a "traumatic event" as defined by regulation as

"the application of external force, violence, chemical, biological, or radiological weapons, or

accidental ingestion of a contaminated substance causing damage to a living being."  *Id.* ¶ 33

(quoting *id.*, Ex. 8, Letter Explaining Denial of First Appeal (June 2, 2009), ECF No. 11-8).

Plaintiff filed another appeal on May 31, 2010, *id.* ¶ 34 (citing *id.*, Ex. 9, Lopez's Second

Appeal Letter (May 31, 2010), ECF No. 11-9), and the TSGLI Appeals Board again rejected

plaintiff's claim on June 15, 2010, this time concluding that the applicable regulations explicitly

excluded his injury from TSGLI coverage, *id.* ¶ 35 (citing *id.*, Ex. 10, Second Appeal Denial

Letter (June 15, 2010), ECF No. 11-10).  The cited regulation expressly excludes from coverage

losses due to "preventive medical procedures such as inoculations."  Second Appeal Denial

Letter (June 15, 2020) at 2 (quoting 38 C.F.R. § 9.20(e)(3)(i)(C)).

Plaintiff then appealed, on May 18, 2012, the denial of TSGLI benefits to the Board for

Correction of Naval Records ("BCNR"), but the case was administratively closed, without

prejudice, on April 9, 2013, because the BCNR could not obtain plaintiff's medical records from

the VA.  *Id.* ¶ 36 (citing *id.*, Ex. 11, Lopez's Third Appeal Letter (May 18, 2012), ECF No. 11-

11); *id.*, Ex. 12, BCNR Administrative Closure Letter, ECF No. 11-12). [1]  Two years later, on

June 1, 2015, plaintiff appealed again to the BCNR, this time attaching his medical records.  *Id.*

---

[1]     The BCNR is the terminal administrative body hearing appeals of TSGLI claims for Marines.  Am. Compl.
¶ 23 (citing *id.*, Ex. 4, SECNAVINST 1770.4A at 6, ECF No. 11-4).

¶ 37 (citing *id.*, Ex. 13, Lopez's Renewed Third Appeal Letter (June 1, 2015), ECF No. 11-13).

The BCNR denied this appeal in a letter, dated May 20, 2016, again on the grounds that

plaintiff's injury was specifically excluded by regulation from the scope of the TSGLI.  *Id.* ¶ 38

(citing *id.*, Ex. 1, BCNR Appeal Denial (May 20, 2016), ECF No. 11-1).  The BCNR relied on

the exclusion of injuries caused by inoculations under 38 C.F.R. § 9.20(e)(3).  BCNR Appeal

Denial (May 20, 2016) at 3–4.

### C.    Plaintiff's Lawsuit and Pending Motion to Dismiss

Plaintiff initiated this lawsuit on April 4, 2020 and filed an amended complaint on August

19, 2020, within a month of defendant's filing of the administrative record.  Plaintiff claims that

the TSGLI Appeals Board and the BCNR improperly denied his claim based on a regulation, 38

C.F.R. § 9.20(e)(3), that came into effect *after* his claim was filed.  Am. Compl. ¶ 42.  According

to plaintiff, the BCNR committed legal error by applying the wrong regulation in reviewing his

claim.  *Id*. ¶¶ 43.  Plaintiff further alleges that the regulation itself is arbitrary and capricious.  *Id*.

¶¶ 26–30.  Defendant's pending motion to dismiss, pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6), was filed in October 2020, and briefing was completed in December 2020.

This motion is now ripe for resolution.

## II.    LEGAL STANDARD

The legal standards for motions to dismiss under Rules 12(b)(1) and 12(b)(6) of the

Federal Rules of Civil Procedure are described below, as well as the substantive legal standard

for plaintiff's claims under the Administrative Procedure Act ("APA").

### A.    Federal Rule of Civil Procedure 12(b)(1)

"Article III of the Constitution prescribes that '[f]ederal courts are courts of limited

subject-matter jurisdiction' and 'ha[ve] the power to decide only those cases over which

Congress grants jurisdiction.'"  *Bronner v. Duggan*, 962 F.3d 596, 602 (D.C. Cir. 2020)

(alterations in original) (quoting *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317 (D.C. Cir. 2012));

*see Gunn v. Minton*, 568 U.S. 251, 256 (2013) ("'Federal courts are courts of limited

jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" (quoting

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994))).  Federal courts,

therefore, have a corresponding "independent obligation to ensure that they do not exceed the

scope of their jurisdiction" and "must raise and decide jurisdictional questions that the parties

either overlook or elect not to press."  *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).  Absent

subject-matter jurisdiction over a case, the court must dismiss it.  *See Arbaugh v. Y & H Corp.*,

546 U.S. 500, 506–07 (2006) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)); FED. R. CIV.

P. 12(h)(3).

When considering a motion to dismiss under Rule 12(b)(1), the court must accept as true

all uncontroverted material factual allegations contained in the complaint and "'construe the

complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the

facts alleged' and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v.

FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972

(D.C. Cir. 2005)).  The plaintiff bears the burden of establishing subject-matter jurisdiction by a

preponderance of the evidence.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

### B.      Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "the 'complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"

*Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)); *see also Bowman v. Iddon*, 848 F.3d 1034, 1039 (D.C. Cir. 2017).  A facially plausible

claim pleads facts that are not "'merely consistent with' a defendant's liability" but that also

"allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007));
*see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).  In deciding a motion under
Rule 12(b)(6), the court must consider the whole complaint, accepting all factual allegations as
true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555.  Courts do not "assume the truth of
legal conclusions, nor do [they] 'accept inferences that are unsupported by the facts set out in the
complaint.'"  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (internal citation omitted)
(quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)).

### C.    Administrative Procedure Act

The APA provides for judicial review of any "final agency action for which there is no
other adequate remedy in a court," 5 U.S.C. § 704, and "instructs a reviewing court to set aside
agency action found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in
accordance with law.'"  *Cigar Ass'n of Am. v. FDA*, 964 F.3d 56, 61 (D.C. Cir. 2020) (quoting
5 U.S.C. § 706(2)(A)).  This standard "'requires agencies to engage in reasoned
decisionmaking,' and . . . to reasonably explain to reviewing courts the bases for the actions they
take and the conclusions they reach."  *Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R.
Admin.*, 972 F.3d 83, 115 (D.C. Cir. 2020) (quoting *Dep't of Homeland Sec. v. Regents of Univ.
of Cal.* ("*Regents*"), 140 S. Ct. 1891, 1905 (2020)).  An agency decision may be arbitrary and
capricious if the agency has relied on factors which Congress has not intended it to consider,
entirely failed to consider an important aspect of the problem, offered an explanation for its
decision that runs counter to the evidence before the agency, or is so implausible that it could not
be ascribed to a difference in view or the product of agency expertise.  *Motor Vehicle Mfrs.
Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  Judicial review
of agency action is limited to "the grounds that the agency invoked when it took the action,"

*Regents*, 140 S. Ct. at 1907 (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)), and the

agency, too, "must defend its actions based on the reasons it gave when it acted," *id.* at 1909.

## III.   DISCUSSION

Plaintiff alleges that the BCNR improperly applied the revised version of the TSGLI

regulations to his claim such that the determination "was arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law," Am. Compl. ¶ 47(b)–(c), and, in the

alternative, that the promulgation of the revisions to the TSGLI regulations was itself arbitrary

and capricious, *id.* ¶ 47(a).  Defendant seeks dismissal of these claims on the grounds that the

BCNR did not act arbitrarily, capriciously, or contrary to law in applying the TSGLI regulations

as they existed at the time plaintiff's appeals were adjudicated.  Def.'s Mot.; Def.'s Mem. at 9.

Defendant further moves to dismiss plaintiff's facial challenge to the regulation on the grounds

that: (1) subject-matter jurisdiction is lacking to consider the challenge; (2) plaintiff's APA claim

lies outside the applicable six-year statute of limitations; and (3) plaintiff has failed to plausibly

challenge the regulation as arbitrary and capricious.  Def.'s Mem. at 21–24.

These claims, and defendant's respective grounds for dismissal, are discussed in turn,

after a brief discussion of the relevant regulations.

### A.   Regulatory Framework

Regulations promulgated in 2005 provide that TSGLI benefits are available only for a

"traumatic injury," which is an injury caused by a "traumatic event."  70 Fed. Reg. 75,940,

75,946 (Dec. 22, 2005) (codified at 38 C.F.R. § 9.20(c)(1)).  A "traumatic event" is defined in

the regulations as "the application of external force, violence, chemical, biological, or

radiological weapons, or accidental ingestion of a contaminated substance causing damage to a

living being."  *Id.*  This codified definition was operative at the time of plaintiff's injury and

remains in effect.  38 C.F.R. § 9.20(b)(1).  The definition of "traumatic injury" expressly

excludes "[a] mental or physical illness or disease, except if the physical illness or disease is caused by a pyogenic infection, biological, chemical, or radiological weapons, or accidental ingestion of a contaminated substance." *Id.* § 9.20(c)(ii); *see also* 70 Fed. Reg. at 75,946 (implementing this exclusion in the 2005 interim final rule).  The regulation further provides that "a benefit will not be paid if a scheduled loss is due to a traumatic injury . . . [c]aused by . . . [m]edical or surgical treatment of an illness or disease."  38 C.F.R. § 9.20(e)(3)(i)(C); *see also* 70 Fed. Reg. at 75,946 (implementing this exclusion in the 2005 interim final rule).

The disputes in this case—and the basis for the BCNR's denial of plaintiff's last appeal— revolve around a November 26, 2008 amendment to this last regulatory provision.  Specifically, the regulation was revised, as reflected in the italicized language, to exclude explicitly losses due to traumatic injuries caused by "*preventive medical procedures such as inoculations*, medical or surgical treatment for an illness or disease, *or any complications arising from such procedures or treatment*."  73 Fed. Reg. 71,926, 71,931 (Nov. 26, 2008) (emphasis added) (codified at 38 C.F.R. § 9.20(e)(3)(i)(C)).  The provisions defining "traumatic injury" and "traumatic event" remained the same after the 2008 revision.

## B.     Application of the 2008 Regulations

Plaintiff claims that the BCNR erred in applying this exclusion of "preventative medical procedures such as inoculations" in denying his claims.  He argues that this exclusion constituted a "cancellation of TSGLI coverage for traumatic injury caused by inoculations" and that the application of this exclusion was improperly retroactive since the regulation came into effect more than two years after he was injured and more than six months after he initially filed his claim.  Am. Compl. ¶¶ 26, 42 (citing BCNR Denial Letter).  Defendant counters that the exclusion relied upon by the BCNR was properly applied to plaintiff's claim because (1) the rulemaking promulgating the regulation states the exclusion applies to injuries incurred prior the

date of promulgation, and (2) the rulemaking had no "retroactive effect" since it did not change

the scope of coverage with respect to plaintiff's claims.  Def.'s Mem. at 10–12.

### 1.    *Application to Prior Conduct*

First, defendant argues that the 2008 regulation applies on its face to claims that arose

before promulgation of the rule.  *Id.* at 9–10.  The rulemaking published in the Federal Register

explicitly states, under the heading "Applicability Date," that the "VA will apply this rule . . . to

all qualifying injuries incurred on or after December 1, 2005," 73 Fed. Reg. at 71,926, thereby

making clear that the change applies to claims based on injuries occurring before the enactment

of the rule.  The rulemaking goes on to explain this application:

> In 2007, VA applied changes to the TSGLI program made by the Veterans'
> Housing Opportunity and Benefits Improvement Act of 2006, Public Law 109-
> 233, section 501(a)(3), 120 Stat. 397, 413, to claims filed or injuries suffered prior
> to the date of the change in the law because it was consistent with the objectives
> of the TSGLI provisions authorizing payments based on injuries preceding the
> program's creation. 72 FR 10362, 10363 (2007).  We believe that the same holds
> true with regard to the changes made by this rulemaking.

*Id.*  The rulemaking then describes why application to prior conduct is permissible, noting that

the "regulatory amendments would not have affected conduct prior to the date of publication, nor

would the regulations upset any settled expectations in any meaningful way."  *Id.* (citing

*Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994); *Princess Cruises, Inc. v. United States*,

397 F.3d 1358, 1362–63 (Fed. Cir. 2005)).

Plaintiff responds that the rule was intended to apply to past injuries only to the extent

that *expanded* coverage.  Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 8, ECF No. 15.

To this end, plaintiff points to other language in the rulemaking contemplating its retroactive

application as expanding coverage.  *Id.* at 8 (quoting 73 Fed. Reg. at 71,930) ("The amendments

would be applied retroactively for losses previously not covered that result from injuries that

occurred on or after October 1, 2001 . . . approximately 1640 Servicemembers who were not

previously eligible for TSGLI would now be entitled to a payment under these amended rules and are in need of these payments as soon as possible.")). The context of this statement undercuts plaintiff's argument, however. This excerpt is part of the VA's explanation for why the rule was promulgated as an interim final rule: it wanted to get payment to newly eligible servicemembers "as soon as possible." 73 Fed. Reg. at 71,930. The VA's explanation for forgoing public comment does not limit the retroactive application of the rulemaking to benefits. *See* Def.'s Reply Supp. Mot. to Dismiss ("Def.'s Reply") at 11, ECF No. 18. Put another way, the VA's interest in immediately expanding benefits for some servicemembers does not mean that the agency intended the regulation to apply retroactively only insofar as it expanded benefits.

Plaintiff further argues that a statement that "the regulations will increase the Government's economic burden" as indicating that the exclusion for preventative medical procedures, such as inoculations, is not intended to be retroactive. Pl.'s Opp'n at 10–11 (quoting 73 Fed. Reg. at 71,927). This statement, however, is not at all inconsistent with defendant's position that the inoculation provision applies to past injuries but has no effect whatsoever on the scope of coverage.

Instead, the rulemaking applied on its own terms "to all qualifying injuries incurred on or after December 1, 2005." 73 Fed. Reg. at 71, 927; *see also id.* (describing the retroactivity of "the changes made by this rulemaking").[2]

---

[2] Plaintiff makes arguments regarding the intent of Congress for the government to limit benefits retroactively, Pl.'s Opp'n at 8–9, but defendant's argument does not depend on the intent of Congress. Def.'s Mot. at 11 n.2 ("Defendant is not addressing the question of Congressional intent in this motion, but reserves the right to do so at a later date if necessary."). Indeed, the intent of Congress is irrelevant if the regulation does not have retroactive effect. *Landgraf*, 511 U.S. at 270.

2.     *Retroactive Effect*

Rules may only have "retroactive effect" if the agency clearly intended that the rule have retroactive effect and Congress authorized retroactive rulemaking.  *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).  At the same time, a statute or regulation may be applied to prior conduct—even if Congress did not expressly authorize retroactive application—so long as it does not have a retroactive effect.  *Landgraf*, 511 U.S. at 270.  "A provision 'does not operate retrospectively merely because it is applied in a case arising from conduct antedating [its] enactment.'"  *Johnson v. Copyright Royalty Bd.*, 969 F.3d 363, 380 (D.C. Cir. 2020) (alterations in original) (quoting *Treasure State Res. Indus. Ass'n v. EPA*, 805 F.3d 300, 305 (D.C. Cir. 2015)).  Instead, a court evaluating a rule for retroactive effect must ask whether the rule "attaches new legal consequences to events completed before its [promulgation]" and consider "fair notice, reasonable reliance, and settled expectations" of the parties.  *Treasure State*, 805 F.3d at 305; *see also Boniface v. Dep't of Homeland Sec.*, 613 F.3d 282, 288 (D.C. Cir. 2010) (quoting *Landgraf*, 511 U.S. at 280) ("[I]n evaluating whether a statute or regulation has a retroactive effect we consider 'whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'").

Defendant's argument is straight-forward: the regulation at issue does not have retroactive effect because plaintiff "could not have reasonably expected at the time he received the vaccination in 2006 that a physical illness or disease resulting from his receipt of the vaccination would constitute a 'traumatic event' resulting in a covered 'traumatic injury' as required for TSGLI coverage under regulations as they then existed."  Def.'s Mem. at 12.  Under defendant's reading of the regulations, the 2008 addition "merely explained or clarified the

already-existing basis for exempting TSGLI coverage for complications from vaccinations." *Id.* at 15.

Defendants rely on, first, the 2005 regulation's definition of "traumatic event," a prerequisite for coverage, as "the application of external force, violence, chemical, biological, or radiological weapons, or accidental ingestion of a contaminated substance causing damage to a living being." 70 Fed. Reg. at 75,946; 38 C.F.R. § 9.20(b)(1).  Since administration of a vaccine does not constitute "external force," nor is a vaccine a "biological weapon," defendant reasons that a vaccination is not a "traumatic event."  Def.'s Mem. at 13 & n.3.  Second, the 2005 regulation defines "traumatic injury" to exclude "damage to a living body" caused by a "physical illness or disease, except if the physical illness or disease is caused by a pyogenic infection, biological, chemical, or radiological weapons, or accidental ingestion of a contaminated substance."  70 Fed. Reg. at 75,946; 38 C.F.R. § 9.20(c)(2)(ii).  Defendant argues that even if vaccination could constitute a "traumatic event," plaintiff's claim would fall under this exclusion for traumatic injuries caused by "physical illness or disease," which would cover Acute Disseminated Encephalomyelitis, the condition that caused plaintiff's loss.  Def.'s Mem. at 13.

In sum, defendant posits that "the exclusionary language in the November 2008 regulation at issue did not reduce coverage that otherwise would have been available to [p]laintiff," Def.'s Reply at 3, so the regulation did not "attach[] new legal consequences." *Treasure State*, 805 F.3d at 305*; see also Ibrahim v. District of Columbia*, 208 F.3d 1032, 1035 (D.C. Cir. 2000).  If the new regulation did not affect the adjudication of plaintiff's claim, he had no interests in "fair notice, reasonable reliance, and settled expectations." *See Treasure State*, 805 F.3d at 305.

Plaintiff disputes defendant's reasoning, responding that the 2008 regulation changed the scope of TSGLI coverage to exclude what previously would have been covered, and that the regulation therefore had a retroactive effect.  Pl.'s Opp'n at 10–13.  This response is largely devoted to explaining why vaccination for smallpox constitutes a "traumatic event" covered under the 2005 regulations.  According to plaintiff, the *smallpox vaccine* constitutes a "biological weapon" because the *smallpox virus* is a "biological weapon," and the smallpox vaccine is "used by the military as a defensive weapon."  *Id.* at 13 (citing regulation, 70 Fed. Reg. at 75,946; 38 C.F.R. § 9.20(e)(6)(x), which defines "biological weapon" as "biological agents or microorganisms intended to kill, seriously injure, or incapacitate humans through their physiological effects").

Plaintiff's argument reflects flawed logic. The definition of "biological weapon" may include the *smallpox virus* itself when intended to cause harm, but certainly does not include the *smallpox vaccine*, which is intended not to "kill, seriously injure, or incapacitate humans," but rather to provide a protective immune response.[3]

Plaintiff further states that "his injection was part of mandatory pre-deployment training for a combat deployment," so "[t]he injuries he incurred as a result of that are no different than if he had injured himself doing any other pre-deployment training such as rappelling or live fire exercises."  Pl.'s Opp'n at 16 (citing *Blackwood v. United States*, 187 F. Supp. 3d 837, 840 (W.D. Ky. 2016); *Koffarnus v. United States*, 175 F. Supp. 3d 769, 772 (W.D. Ky. 2016); *Stringer v. United States*, No. 11-cv-02584-RPM, 2013 WL 6579039, at *2 (D. Colo. Dec. 13,

---

[3]       Plaintiff's reference to his injuries as "the direct result of smallpox," Pl.'s Opp'n at 13, might be taken to mean that his injuries were caused by smallpox virus in the vaccine and that the vaccine is therefore a "biological weapon."  This argument is also flawed, as a factual matter.  The Food and Drug Administration source cited by plaintiff indicates that no smallpox virus is present in the smallpox vaccine.  *ACAM2000 (Smallpox Vaccine) Questions and Answers*, U.S. Food & Drug Admin. (March 23, 2018), available at http://www.fda.gov/vaccines-blood-biologics/vaccines/acam2000-smallpox-vaccine-questions-and-answers (last visited March 9, 2021).

2013)).  Plaintiff does not describe, however, why his injury is "no different" within the context of the applicable regulations.  In each of the cases he cites, the prevailing plaintiff suffered from some form of external, non-consensual application of force.  *See Blackwood*, 187 F. Supp. 3d at 840 (spinal cord injury from six-foot fall in obstacle course); *Koffarnus*, 175 F. Supp. 3d at 772 (gunshot wound); *Stringer*, 2013 WL 6579039, at *2 (spinal disc injury sustained in car crash).  Such injuries are clearly caused by "external force [or] violence."  38 C.F.R. § 9.20(b).

While the broader context of plaintiff's injury may be similar—*i.e.*, pre-deployment training—what matters is the kind of injury that he sustained.  Voluntary inoculation is simply not a "traumatic event" involving "external force [or] violence."  *See* 70 Fed. Reg. at 75,941 (distinguishing "trauma," which "is frequently defined with reference to external force or violence," from "disease," which "refers to some type of internal infection or degenerative process").

Plaintiff does not directly address defendant's argument that plaintiff's injuries were caused by Acute Disseminated Encephalomyelitis and that this condition constitutes an "illness or disease" excluded from coverage.  *See* 70 Fed. Reg. at 75,941; 38 C.F.R. § 9.20(c)(2)(ii). Instead, plaintiff points to an entirely separate provision excluding from coverage traumatic injuries caused by "medical or surgical treatment of an illness or disease."  70 Fed. Reg. at 75, 947; 38 C.F.R. § 9.20(e)(3)(i)(C).  Plaintiff argues that his "injuries were not caused by a 'medical or surgical treatment of an illness or disease' because [he] was neither ill, nor was he being treated to prevent illness from a disease that occurs naturally."  Pl.'s Opp'n at 16.  This, however, only addresses a minor argument defendant makes that the smallpox inoculation constitutes a "medical treatment" of a disease.  Def.'s Mem. at 16.

Defendant's argument that plaintiff's injuries were the result of a "physical illness," within the meaning of 38 C.F.R. § 9.20(c)(2)(ii), is compelling and is not seriously contested. Acute Disseminated Encephalomyelitis is a "diagnosable inflammatory disorder" that defendant contends fits into the relatively broad category of "physical illness" excluded by the regulation. Def.'s Reply at 1 (citing *Acute Disseminated Encephalomyelitis Information Page*, National Institute of Neurological Disorders and Stroke, National Institutes of Health, http://www.ninds.nih.gov/Disorders/All-Disorders/Acute-Disseminated-Encephalomyelitis-Information-Page (last visited March 9, 2021)). The regulation made an exception for an illness or disease that the VA thought would be particularly likely to result from the kinds of traumatic injuries contemplated by the statute. 70 Fed. Reg. at 75,942 (noting that "pyogenic infection" is covered, despite being a disease, because it "is likely to occur as a result of injuries, *i.e.*, wounds, that are incurred under military conditions"). No such exception is provided for plaintiff's extraordinarily rare condition, an illness associated with infection or vaccination.

Plaintiff's arguments based on the substance of the 2008 rulemaking are no more persuasive. Language in the 2008 rulemaking that "[w]e are also revising § 9.20(e)(3)(i)(C) to explain that TSGLI is not payable if a traumatic injury is caused by preventive medical procedures such as inoculations," 73 Fed. Reg. at 71,927, plaintiff contends, reflects an understanding that the rule changed coverage of preventative medical procedures such as inoculations. Pl.'s Opp'n at 14. This statement follows a description of other changes made to make the regulations "consistent with commercial policies." 73 Fed. Reg. at 71,927. Plaintiff contends that the location of the sentence and the phrase "also revising" indicates a "modification to [the agency's] practices." Pl.'s Opp'n at 14. This language does not, however,

come close to supporting plaintiff's conclusion.  The use of the term "explaining" suggests just

that: an *explanation* of, rather than a substantive change to, the scope of coverage.

Other language in the 2008 rulemaking strongly supports defendant's understanding that

the addition of express language excluding inoculations was clarifying and left the scope of

coverage unchanged.  The Federal Register notice states:

> We are revising 38 CFR 9.20(b)(3) to state that the term "traumatic event" does not
> include a medical procedure or a surgical procedure in and of itself.  Current § 9.20(b)(3)
> only refers to a surgical procedure. *The revision makes the regulation consistent with*
> *VA's current practice of not providing TSGLI payments for an injury that directly*
> *results from either a medical or surgical procedure.*  The publication of this revision to the
> current rule will not result in any deviation from already established guidelines or processes.
> Further, the revised definition is consistent with current 38 CFR 9.20(e)(3)(i)(C), which
> excludes payment for a scheduled loss due to a traumatic injury caused by either medical
> treatment or surgical treatment of an illness or disease.

73 Fed. Reg. at 71,926–27 (emphasis added).  The language above indicates that agency practice,

before the 2008 rulemaking, was to exclude payments for injuries stemming from medical

procedures, which no doubt includes inoculations.  Indeed, the language in the rule describes

inoculations as a kind of "preventive medical procedure[]."  73 Fed. Reg. at 71,931; 38 C.F.R.

§ 9.20(e)(3)(1)(C).  This statement from the notice supports defendant's interpretation of the

regulations as they stood in 2006: injuries stemming from medical procedures such as

inoculations were not entitled to benefits under the TSGLI.

Vaccination is not a "traumatic event" under 38 C.F.R. § 9.20(b), and the Acute

Disseminated Encephalomyelitis that plaintiff suffered from following vaccination is an "illness"

within the meaning of 38 C.F.R. § 9.20(c)(ii), excluded from the definition of "traumatic injury."

Plaintiff's injuries therefore would not be covered under TSGLI, even as the regulations stood at

the time of his injury in 2006.  Since the operative 2008 regulation had no retroactive effect on

the coverage of injuries due to vaccine complications, the BCNR's denial of plaintiff's claim

under the vaccine exclusion provision of 38 C.F.R. § 9.20(e)(3)(i)(C) was not arbitrary, capricious, or contrary to law.

### C.     The BCNR's Consideration of Retroactivity

Plaintiff briefly argues that the BCNR's application of the vaccination exclusion was arbitrary and capricious "because it never made a determination about whether the regulation should apply retroactively." Pl.'s Opp'n at 13. This argument is without merit. For support, plaintiff cites only a case in which the district judge found that the change in agency policy attached "new legal consequences" to past events and therefore had retroactive effect. *See Kirwa v. U.S. Dep't of Defense*, 285 F. Supp. 3d 257, 272 (D.D.C. 2018). Here, as described above, the 2008 regulation had no legal consequences with respect to the viability of plaintiff's claim—the scope of coverage did not change.

Moreover, the BCNR *did* consider whether application of the 2008 regulation was appropriate. The BCNR's letter denying plaintiff's appeal noted plaintiff's argument "that relief is warranted since the inoculation rule was passed two years" after the relevant events, but nonetheless concluded that the rule was applicable because "it was in effect at the time of [plaintiff's] application." BCNR Denial Letter at 3–4.[4]

The BCNR considered and rejected plaintiff's argument that the rule should not apply retroactively, so the basis for this attack on the BCNR's decision is unclear. To the extent that plaintiff is arguing that the BCNR—a body within the Department of the Navy that conducts administrative review—is required to carry out the *Landgraf* retroactivity analysis that federal courts use to determine whether an agency's retroactive application of a regulation is

---

[4]     The BCNR further noted that the "rule was enacted with the knowledge that it would negatively impact certain service members." BCNR Denial Letter at 3–4. This statement is at odds with the defendant's interpretation of the regulations as presented in this case and this Court's view, *see supra* Part III.B, but plaintiff does not argue that this statement alone renders the BCNR's decision arbitrary and capricious.

permissible, the Court disagrees.  It was enough for the BCNR to consider plaintiff's argument and determine that application of the rule in effect at the time of plaintiff's application was appropriate.  This is all the more true because the regulation itself states that it applies to prior conduct in the period when plaintiff's claim arose.  73 Fed. Reg. at 71,926; *see also supra* Part III.B.1.  The BCNR determination that the current regulation applied to plaintiff's claim was not arbitrary and capricious.

### D.        Promulgation of the 2008 Regulations

Plaintiff's amended complaint further alleges that the November 2008 regulation is itself arbitrary and capricious, so the BCNR's application of the regulation was arbitrary and capricious or contrary to law.  Am. Compl. ¶¶ 27–30.  Plaintiff suggests that the exclusion of preventive procedures like inoculations was promulgated specifically "in response to [plaintiff's] claim for benefits," highlighting (1) the brief time lapse of six months between the denial of plaintiff's claim and subsequent promulgation of the 2008 regulation, (2) a perceived mismatch with the general expansion of coverage in the interim final rule, and (3) its grouping with "a wholly unrelated provision (on diagnostic procedures)."  *Id.* at ¶ 29. These are indicia, according to plaintiff, that the express exclusion of inoculations was "a last minute add-on" and that "[t]he exclusion . . . lacks any reasonable basis in the legislation."  *Id.* at ¶¶ 29–30.

Defendant rejects this facial challenge to the 2008 regulation on three grounds.  First, defendant argues that this Court lacks jurisdiction to consider a facial challenge to the VA's rulemaking, which is subject to judicial review only in the United States Court of Appeals for the Federal Circuit.  Def.'s Mem. at 20 (citing 38 U.S.C. § 502).  Second, defendant argues that plaintiff's challenge to the statute falls outside the applicable statute of limitation.  *Id.* at 22 (citing 28 U.S.C. § 2401).  Third, defendant argues that plaintiff fails to state a plausible claim that the VA's 2008 revisions to the regulations were arbitrary and capricious.  *Id.* at 23.  Where,

as here, a defendant files a motion to dismiss under both Rule 12(b)(1) and Rule 12(b)(6), the

Rule 12(b)(1) grounds for dismissal are examined first since "subject matter jurisdiction presents

a threshold question." *El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 874 (D.C. Cir.

2014).[5]

The section of the U.S. Code providing for judicial review of VA regulations requires

that challenges to the facial validity of such regulations be made in the United States Court of

Appeals for the Federal Circuit. The statute provides:

> An action of the [VA] Secretary to which section 552(a)(1) or 553 [of the APA]
> refers is subject to judicial review.  Such review shall be in accordance with
> chapter 7 of title 5 and *may be sought only in the United States Court of Appeals
> for the Federal Circuit*.

38 U.S.C. § 502 (emphasis added).  Section 552 and 553 of the APA describe the process for

promulgating agency rules, including 38 C.F.R. § 9.20(e)(1)(C)(3).  Defendant argues that this

exclusive grant of jurisdiction to the Federal Circuit means that a TSGLI claimant who is

challenging agency determinations under the general jurisdictional grant to district courts under

38 U.S.C. § 1975, which provides that "[t]he district courts of the United States shall have

original jurisdiction of any civil action or claim against the United States founded upon this

subchapter," may not consider a facial challenge to a VA rule.  Defendant relies on the canon of

statutory interpretation that where provisions appear to conflict, "the specific governs the

general."  Def.'s Mem. at 21 (quoting *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566

U.S. 639, 645 (2012)).

Plaintiff responds that he is only asking the Court to find the "rulemaking arbitrary and

capricious for the purpose of assessing the BCNR's decisions related to TSGLI," and that the

---

[5]    Plaintiff does not contest either of defendant's arguments under Rule 12(b)(6), so the court may treat them
as conceded.  *See Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014).  Nevertheless, the subject matter
jurisdiction issue must be addressed first.

Court has jurisdiction under 38 U.S.C. § 1975.  Pl.'s Opp'n at 14.  Plaintiff further argues that considerations of judicial economy counsel consideration of all issues before this Court, without imposing the "extra burden" on him of filing a separate suit to challenge the VA regulation.  *Id.*  Plaintiff argues that the cases defendant cites are distinguishable on the grounds that they deal with "direct challenges to VA rulemaking."  *Id*.

None of plaintiff's arguments is convincing given the clear grant of exclusive jurisdiction to the Federal Circuit under 38 U.S.C. § 502.  "Congress is free to 'choose the court in which judicial review of agency decisions may occur.'"  *Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007) (quoting *Five Flags Pipe Line Co. v. Dep't of Transp.*, 854 F.2d 1438, 1439 (D.C. Cir. 1988)).  Here, Congress has generally provided district courts with jurisdiction to review BCNR decisions related to TSGLI but has vested exclusive jurisdiction to challenge the applicable regulations themselves in the Federal Circuit.  The painstakingly specific grant of exclusive jurisdiction in 38 U.S.C. § 502 cannot be overcome on the basis of a broad grant of general jurisdiction to the district courts over claims related to servicemembers' insurance claims.  *See RadLAX Gateway Hotel, LLC*, 566 U.S. at 645.

This is particularly true here, where Congress vested exclusive jurisdiction in the Federal Circuit to "deliberately target[]" a "specific problem[] with [a] specific solution."  *Id.* (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 519 (1996) (Thomas, J., dissenting)).  Allowing a workaround to the Federal Circuit's exclusive jurisdiction over judicial review of VA regulations would be at odds with, and indeed frustrate, congressional purpose in enacting the Veterans' Judicial Review Act, Pub. L. 100–687, 102 Stat. 4105 (1988), in which Congress sought specifically to promote uniformity in the status and review of VA actions and regulations.  *See* H.R. Rep. No. 100–963, at 28 (1988) (expressing Congress's purpose in enacting the provision

"to avoid the possible disruption of VA benefit administration which could arise from conflicting opinions on the same subject due to the availability of review in the 12 Federal Circuits or the 94 Federal Districts" and stating that "the subject of veteran benefits rules and policies is one that is well suited to a court which has been vested with other types of specialized jurisdiction"); *see also United States v. Szabo*, 760 F.3d 997, 1005 (9th Cir. 2014) (describing this legislative history and underlying Congressional purpose, and concluding that the Ninth Circuit did not have jurisdiction to consider the facial validity of a VA regulation).

Plaintiff urges, without authority, that his challenges be considered together for purposes of judicial economy, Pl.'s Opp'n at 14, but the Court may not "ignore a jurisdictional barrier in the name of judicial economy." *Pub. Citizen v. Nuclear Regulatory Comm'n*, 901 F.2d 147, 153 (D.C. Cir. 1990). Plaintiff's further attempts to distinguish between "direct challenges to VA rulemaking" and his request that the Court "find the 2008 VA TSGLI rulemaking arbitrary and capricious for the purpose of assessing the BCNR's decisions related to TSGLI" similarly fail. Pl.'s Opp'n at 14. Plaintiff cites no caselaw for this distinction, nor could he. Defendant's claim necessarily entails a facial challenge to a VA regulation, and regardless of how that challenge is formulated, this Court lacks jurisdiction under 38 U.S.C. § 502 to adjudicate it. *See Szabo*, 760 F.3d at 1004–05.

## IV.  CONCLUSION

For the foregoing reasons, the government's motion to dismiss is granted. Plaintiff has not plausibly alleged that the BCNR acted arbitrarily, capriciously, or contrary to law in denying his claim, and the Court lacks jurisdiction to review the facial validity of the 2008 VA regulation clarifying that injuries stemming from vaccination are not covered by the TSGLI.

An Order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  March 10, 2021

_____
BERYL A. HOWELL
Chief Judge